**Stephanie WATSON, Plaintiff,**

v.

**CLEVELAND MUNICIPAL SCHOOL DISTRICT, et al., Defendants.**

**No. 04 CV 1825.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 16, 2005.

Paul C. Morrison, Millisor & Nobil, Cleveland, OH, for Plaintiff.

Mark J. Valponi, Taft, Stettinius & Hollister, Cleveland, OH, for Defendant.

### Memorandum of Opinion and Order

GAUGHAN, District Judge.

### INTRODUCTION

This matter is before the Court upon Defendant Cleveland School District's Motion for Summary Judgment (Doc. 37). This case arises out of the termination of plaintiff's health care coverage. For the reasons that follow, the motion is GRANTED.

### FACTS

Plaintiff, Stephanie Watson, filed this lawsuit against defendants, Cleveland Municipal School District ("Cleveland Schools") and Ceredian Benefits Services, Inc. ("Ceridian"). This Court previously dismissed Ceridian and, as such, Cleveland Schools is the only remaining defendant.

The facts of this case are largely undisputed. Plaintiff worked as a teacher for Cleveland Schools until December 18, 2001, on which date she suffered a work related injury. From December 18, 2001, through February, 2002, plaintiff used her accumulated sick time. As a result, Cleveland Schools continued to pay plaintiff's health insurance premiums. At the end of February, plaintiff went on inactive, un-paid leave. Plaintiff was entitled to, and received, three additional months of health care coverage at the expense of Cleveland Schools. Thereafter, on June 1, 2002, plaintiff's health care coverage should have been terminated. Due to a clerical error, however, plaintiff continued to receive coverage as if she were still an employee. At the end of 2002, Cleveland Schools discovered its mistake and stopped paying her health insurance premiums as of the end of the year.

Plaintiff learned of the cancellation at some point in 2003. Thereafter, plaintiff filed a grievance with the teacher's union and, as a result, Cleveland Schools reinstated her coverage retroactive to January 1, 2003. In a letter dated March 31, 2003, plaintiff received a COBRA election form. That letter provides, in relevant part,

> If you elect coverage, and if you meet all other requirements explained on the enclosed information sheet, your continuation coverage will begin on 01/01/03.

> That letter also provides that the "qualifying event" date is June 1, 2002.

On May 22, 2003, plaintiff elected coverage and remitted one month's payment. According to defendant, this payment was for coverage for the month of January 2003. On July 6, 2003, plaintiff made a lump sum payment for coverage for February through June, 2003. Thereafter, plaintiff remained current on her premium payments and received COBRA coverage through December 1, 2003.

Plaintiff filed this lawsuit asserting one claim for relief. According to the amended complaint, plaintiff is entitled to 18 months of COBRA coverage commencing as of March 2003.[1] As such, plaintiff argues that defendant improperly terminated her coverage on December 1, 2003.

---

1. Notably, in her brief in opposition, plaintiff claims that she is entitled to 18 months of continuation coverage commencing as of January 1, 2003.

Plaintiff further asserts that defendant failed to timely notify her of her right to elect continuation coverage.

Cleveland Schools moves for summary judgment and plaintiff opposes the motion.

## STANDARD OF REVIEW

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Federal R. Civ. P. 56(c)); *see also LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Federal R. Civ. P. 56(c)). A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.,* 53 F.3d 146, 150 (6th Cir.1995) (citation omitted); *see also United States v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox,* 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "[t]he mere existence of a scintilla of evidence in support of [the nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for" that party. *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). Moreover, if the evidence is "merely colorable" or "not significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## DISCUSSION

■ Defendant moves for summary judgment on the grounds that plaintiff received 18 months of COBRA coverage and, as such, is not entitled to relief. According to defendant, plaintiff's "qualifying event date" is June 1, 2002, the date on which her inactive/unpaid leave ended. Plaintiff argues in her brief in opposition that her qualifying event date is January 1, 2003. She bases her argument on the

letter she received along with her COBRA election form, which indicates, "continuation coverage will begin on January 1, 2003."

Because Cleveland Schools is a public employer, this dispute is governed by the Public Health Services Act ("PHSA"), as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). Pursuant to 42 U.S.C. 300bb–1, state and local governmental group health plans must provide eighteen months[2] of "continuation" health care coverage in certain circumstances. Specifically, that section provides,

(a) In general

In accordance with regulations which the Secretary shall prescribe, each group health plan that is maintained by any State that receives funds under this chapter, by any political subdivision of such a State, or by any agency or instrumentality of such a State or political subdivision, shall provide, in accordance with this subchapter, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

Thus, upon the occurrence of a "qualifying event," Cleveland Schools was statutorily obligated to provide plaintiff with continuation coverage. In this case, the parties dispute the date on which Cleveland Schools' obligation to provide continuation coverage was triggered. According to plaintiff, the obligation did not arise until January 1, 2003, the date indicated in her COBRA election form. Defendant, on the other hand argues, that the "qualifying event" date is June 1, 2003, the date on which plaintiff was no longer eligible for medical coverage under the Cleveland Schools's plan.

"Qualifying event" is defined in 42 U.S.C. § 300bb–3, as

... [A]ny of the following events which, but for the continuation coverage required under this subchapter, would result in the loss of coverage of a qualified beneficiary:

\*   \*   \*   \*   \*   \*

(2) The termination (other than by reason of such employee's misconduct), or reduction in hours, of the covered employee's employment.

In *Gaskell v. Harvard Cooperative Society*, 3 F.3d 495 (1st Cir.1993), the First Circuit addressed nearly the identical issue presented in this case. Plaintiff went on disability leave and received full salary and benefits paid by his employer. One year later, plaintiff terminated his employment. Thereafter, it appears that plaintiff's employer voluntarily paid for health care coverage for an additional six months. Upon the termination of this additional period of coverage, plaintiff received a letter indicating that he could continue his coverage for eighteen months. Plaintiff argued that the "qualifying event" date should be the date on which coverage actually ended. Defendant, on the other hand, argued that the "qualifying event" date should be the date on which the loss of coverage was triggered, even though coverage ultimately ceased at a later date. Citing the legislative history and proposed Treasury Regulations, the court agreed with defendant. Specifically, the court relied on S.Rep.No. 146, 99th Cong., 2d Sess. 3, 365, which provides in pertinent part,

Th[e] 18–month period [of continuation coverage] includes, and is not in addition

---

2. In certain circumstances employees and their beneficiaries may be entitled to a longer period of coverage. In this case, however, the parties do not dispute that plaintiff was entitled to receive eighteen months of continuation coverage.

to, any continuation period presently permitted under local law. Thus, for example, if the plan presently provides that dependent coverage ceases one month after the date of an employee's death, the bill would require that beneficiaries be entitled to elect continuation coverage for up to 18 months following the date of death, not the 18–month period beginning with the actual cessation of coverage one month after the employee's death.

*Gaskell,* 3 F.3d at 499.

> Based on the aforementioned, the *Gaskell* court determined,

> ... [T]he [plaintiffs'] eighteen-month "continuation coverage" period ran from the date of the event which triggered [the employee's] loss of benefits under the terms of the [employer's] group insurance plan, and not from the [date on which the employer] ceased its voluntary provision of employer-paid group plan insurance....

*Id.* at 500. *See also, Burgess v. Adams Tool & Eng'g, Inc.,* 908 F.Supp. 473 (W.D.Mich.1995) (qualifying event date was reduction in employee's hours, not date on which employer ceased voluntarily paying health insurance premiums).

▮ To determine what triggered the loss of benefits, the terms of the plan at issue control. *Gaskell,* 3 F.3d at 501. Thus, in order to determine the "qualifying date," a court must review the plan to determine the date on which an event occurred that, pursuant to the terms of the plan, would ultimately lead to a loss of coverage.

In this case, neither party provided the Court with a copy of Cleveland School's plan. Cleveland Schools, however, provides the affidavit from one of its benefits specialists, who avers as follows,

- Plaintiff last reported to work on December 18, 2001, and used her accumulated sick time to remain on active payroll and maintain her status as an active employee through February of 2002 (Grady Aff. ¶¶ 4–6).

- At the end of February, Cleveland Schools converted plaintiff's status to inactive, unpaid leave and, pursuant to "policy," Cleveland Schools paid plaintiff's health insurance premiums through May of 2002 (Grady Aff. ¶¶ 7–8).

- Cleveland Schools had no obligation [other than through COBRA] to pay plaintiff's health insurance premiums beginning June 1, 2002 (Grady Aff. ¶ 13).

While a copy of the plan is generally required to ascertain the "qualifying event" date, in this case plaintiff does not dispute the aforementioned facts. Rather, plaintiff relies solely on the letter she received in March of 2003, which indicates that "continuation coverage will begin on 01/01/03." It appears that plaintiff is arguing that, because the letter provided a date on which continuation coverage commenced, it must necessarily continue for an 18–month period from that date. Plaintiff's argument, however, wholly ignores the fact that the letter expressly indicates that the "qualifying event" date is June 1, 2002. Because plaintiff does not dispute that she received 18 months of coverage from June 1, 2002, she is not entitled to coverage beyond that point.[3] By statute, the qualifying event date is the relevant date for purposes of triggering the 18–month coverage period, regardless of the

---

**3.** Notably, plaintiff does not make an estoppel argument. In addition, plaintiff's complaint indicates that she is entitled to 18 months of coverage from March of 2003. It appears that plaintiff abandoned this position and is now arguing that the 18–month period commenced in January of 2003.

fact that Cleveland Schools voluntarily continued to pay health care premiums for an additional period of time. As the *Gaskell* Court noted, the "qualifying event" date is not coterminous with the actual loss of coverage. As such, to the extent plaintiff is arguing that she is entitled to an additional term of coverage, her argument is rejected and defendant is entitled to summary judgment.

■ Plaintiff also argues that Cleveland Schools failed to give timely notice of her right to elect continuation coverage. Cleveland Schools does not appear to dispute that notice was not timely provided. Rather, it argues that plaintiff fails to demonstrate that she is entitled to equitable relief as a result of the failure. In essence, Cleveland Schools argues that plaintiff suffered no damages as a result of the untimely notice.

Pursuant to the PHSA, an employer must provide a plan administrator with notice of a "qualifying event" within 30 days of its occurrence. 42 U.S.C. § 300bb–6(2). Thereafter, a plan administrator must notify all eligible beneficiaries within 14 days of the notification. 42 U.S.C. § 300bb–6(4)(A). If notice is not properly provided, an individual may bring an action for "appropriate equitable relief." 42 U.S.C. § 300bb–7. Equitable relief under the PHSA is to be narrowly construed and limited to "injunction, mandamus, and equitable restitution [as those] were the categories of relief typically available in equity." *Thomas v. Town of Hammonton*, 351 F.3d 108, n. 5 (3rd Cir.2003).

Plaintiff appears to argue that, as a result of the late notice, she was without health care coverage for a period of time. Specifically, plaintiff claims that she was unable to receive medical treatment during January through March of 2003 and that certain medical providers refused to treat her due to a lack of coverage. Thus, according to plaintiff, while her health care coverage was retroactively reinstated, she received no benefit from that coverage. Plaintiff, however, points to absolutely no evidence in support of her argument. The only evidence even alluded to in plaintiff's brief indicates that she cancelled "some surgeries" due to a lack of coverage. She is, however, unable to say when these surgeries were scheduled. (Watson Dep. at 158–61). Moreover, Cleveland Schools points out that plaintiff's medical records indicate that she did in fact see medical providers during this time period. Plaintiff admittedly had no out-of-pocket expenses and points to nothing suggesting that she is entitled to any form of equitable relief. As such, to the extent plaintiff received an untimely notification of her right to elect continuation coverage, the Court finds that plaintiff did not suffer recoverable damages and Cleveland Schools is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant Cleveland School District's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.